**IT IS ORDERED as set forth below:**



**Date: August 8, 2014**

_____

**Mary Grace Diehl
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| FAMILY INTERVENTION SPECIALISTS, INC., | : | CASE NO. 14-41744-MGD |
| | : | |
| DEBTOR. | : | |

**ORDER DISMISSING CHAPTER 11 CASE**

This case came before the court on August 8, 2014, for a hearing on the United States Trustee's Motion to Emergency Dismiss Case on Consent of the Debtor [Docket No. 30] and the Supplement thereto [Docket No. 31] (collectively, the "Motion"). Martin P. Ochs, Esq., appeared on behalf of the United States Trustee. Michael Famiglietti appeared on behalf of the debtor, together with Diane Anthony, one of the officers of the debtor, and consented to the Motion on behalf of the debtor.

Having considered the Motion and being advised that the debtor consents to the Motion and is following the protocol (the "Protocol") established by the Georgia Department of Behavioral Health & Developmental Disabilities attached hereto and will continue to follow the

Protocol in connection with the wind down of its business, and finding cause to grant the relief requested by the United States Trustee,

It is hereupon

ORDERED AND ADJUDGED that the Motion is granted, and the debtor's Chapter 11 case is dismissed; and it is further

ORDERED AND ADJUDGED that the debtor will follow the Protocol in connection with the wind down of its business.

**END OF DOCUMENT**

Prepared by:

                        GUY G. GEBHARDT
                        ACTING UNITED STATES TRUSTEE,
                        REGION 21

                        *s/ Martin P. Ochs*
                        MARTIN P. OCHS
                        NY Bar No. MO-1203
                        GA Bar No. 091608
                        United States Department of Justice
                        Office of the United States Trustee
                        362 Richard B. Russell Building
                        75 Spring Street, S.W.
                        Atlanta, Georgia  30303
                        (404) 331-4437
                        martin.p.ochs@usdoj.gov

Entry of this Order is Hereby Consented to:
*/s/Jeffrey D. Bunch*
Jeffrey D. Bunch
Georgia Bar no. 094608

*/s/ Michael C. Famiglietti*
Michael C. Famiglietti
Georgia Bar no. 254941

Attorneys for Debtor in Possession
142 S. Park Sq.
Marietta, GA 30060
(770) 794-8005

**DISTRIBUTION LIST**

MARTIN P. OCHS
United States Department of Justice
Office of the United States Trustee
362 Richard B. Russell Building
75 Spring Street, S.W.
Atlanta, Georgia  30303

Jeffrey D. Bunch
Michael C. Famiglietti
142 S. Park Sq.
Marietta, GA 30060

Georgia Department of Behavioral Health &
 Developmental Disabilities
Two Peachtree Street, N.W.
24th Floor
Atlanta, Georgia  30303

ALL PARTIES LISTED ON THE DEBTOR'S MAILING MATRIX

Welcome Policy User | Behavioral Health & Developmental Disabilities

Tutorials (http://support.policystat.com) | Login (/) | What's New (/whats_new/)



**PolicyStat**

| (/) Home | Title | Chapter | Owner | (/) (/policy_search/title/) (/policy_search/category/) (/policy_search/owner/) (/policy_search/reference/) |
| Search | | Search | | Section (http://www.policystat.com/?utm_source=gadbhdd&utm_medium=logo-link&utm_campaign=product) |

Printer Friendly (/policy/823290/print/Actions%20Necessary%20upon%20Closure%20or%20Termination%20of%20a%20Community%20Provider%20of%20Behavioral%20Health

## Viewing: Actions Necessary upon Closure or Termination of a Community Provider of Behavioral Health Services, 01-116
(/collaboration/feeds/latest/gadbhdd/823290/Kq4BQoBJal7IsDDHCZzqj3/)

**Current Status:** *Active*                                                         PolicyStat ID: *823290*



| | |
|---|---|
| Creation Date: | 5/30/2014 |
| Last Reviewed Date: | 5/30/2014 |
| Last Revision Date: | 5/30/2014 |
| Next Review Date: | 5/29/2016 |
| Owner: | Chris A. Gault, Ph.D.: Assistant Commissioner for Behavioral Health |
| Chapter: | BH Community Services |
| Section: | Behavioral Health Community Services |

## Actions Necessary upon Closure or Termination of a Community Provider of Behavioral Health Services, 01-116

**FULL IMPLEMENTATION DATE - JULY 1, 2014**

**APPLICABILITY**

DBHDD Community Providers of Behavioral Health Services

**POLICY**

DBHDD is committed to ensure the integrity of behavioral health services that are funded in part or entirely by the State of Georgia. In the event that a community provider ceases to deliver contracted services, a standardized, comprehensive plan of action is initiated. The priority in such situations is the safety and continuity of care for individuals engaged in DBHDD-funded services, and the secure transfer and management of information, records and property between the relevant parties. This policy outlines the roles, responsibilities and obligations of all parties involved in the planned or unplanned closure of a service provider or termination of a contract or agreement by DBHDD.

**DEFINITIONS**

**Provider** – For the purposes of this policy, the term "provider" means organizations or persons approved to serve individuals with mental illness and/or addictive diseases, wherein those services are financially supported in whole or in part by funds authorized through DBHDD.

**Warm Hand-Off** – The timely introduction of an individual and the new treatment team or service provider, including the transfer of clinical information, between or within services, to facilitate continuity of care causing minimal distress to the individual served.

**MICP** – The Multipurpose Information Consumer Profile, a document used by DBHDD's external review organization (APS Healthcare Inc.) to authorize community-based behavioral health services.

**PROCEDURES**

A. **Initial Conference of those responsible for management of the situation**
   1. At the earliest indication that a provider may be closing or there is a need to terminate an agreement or contract, a Lead Team is formed by staff members from the DBHDD Office of Provider Network Management (PNM), the Regional Office and the Disability Office by whom the provider was contracted.
   2. The Lead Team appoints a Chair and jointly convene a wider group of DBHDD representatives and associated agencies from the list below, to share information about the provider's current situation:
      a. DBHDD Office of Contracts and Procurement.
      b. DBHDD Office of Legal Services.
      c. DBHDD Disability Director(s).
      d. Regional Coordinator(s) for Region(s) where provider has been operating.
      e. Manager responsible for day-to-day execution of the provider's contract DBHDD.
      f. Assistant Commissioner for Behavioral Health.
      g. DBHDD Records Manager.
      h. DBHDD Office of Facilities and Risk Management.
      i. Department of Community Health (DCH) (if applicable) Assistant Commissioner or Commissioner.
      j. Decision Support (DBHDD Office of Information Management).
      k. State Office and Regional Budget Managers.
      l. State Office of Incident Management (as needed).
      m. State Office of Forensic Services (as needed).
   3. It is the responsibility of the Lead Team Chair to formally report this initial meeting by the next business day to the:
      a. Assistant Commissioner or Commissioner.
      b. Communications Director.
   4. The Communications Director coordinates all media inquiries and staff direct all inquiries to press@dbhdd.ga.gov (mailto:press@dbhdd.ga.gov) in accordance with Requests from Media Sources to DBHDD Staff for Comments or Information, 18-105. (https://gadbhdd.policystat.com/policy/550581/latest/)
   5. All calls or inquiries by or about individuals or their families should be referred to Georgia Crisis and Access Line (GCAL) or the Regional Office as appropriate, to facilitate a warm transfer.

B. **DBHDD Roles, Responsibilities and Obligations**
   1. The following responsibilities are addressed:
      a. The Lead Team ensures that:-
         i. the provider completes the steps below in the section titled 'Provider Responsibilities and Obligations', or
         ii. if the provider is unable to meet their responsibilities, the Lead Team contacts the Office of Legal Services to determine alternate plans to complete the provider's tasks.
      b. Prepare the termination letter from contracts office (Office of Procurement and Contracts, Regional Office, Disability office).
      c. Notify all regions involved (PNM).

    d. Request a report from the External Review Organization (ERO) of the current/active consumer authorizations with basic demographic detail of the name, address, services, etc. to be shared with the region(s) (PNM and Decision Support).

    e. Facilitate transition meetings with providers (Regional Office).

    f. Periodic check-ins with providers (Regional Office).

    g. Develop a timetable for the transition process for the individuals and relevant records (Regional Office)

    h. Report fraud to Medicaid if applicable (PNM).

    i. Report abuse and neglect of individuals (if applicable) to the Office of Incident Management and Investigations (Lead Team).

    j. Create a summary to document the steps that were taken for the file (Regional Office, Lead Team).

    k. Notify GCAL (PNM).

    l. Notify the Georgia Department of Community Health (DCH), if applicable (PNM).

    m. Notify the ERO (PNM).

    n. Conduct final financial accounting regarding the contract (Budget Managers).

    o. Arrange retention of records of individuals no longer in service (Regional Office).

    p. Address facilities management issues if applicable (leased equipment and assets) (Regional Office, DBHDD Office of Facilities and Risk Management, Office of Procurement & Contracts).

    q. Report any ethical violations to professional licensure boards in accordance with Professional Licensing or Certification Requirements and the Reporting of Practice Act Violations, 04-101 (https://gadbhdd.policystat.com/policy/149288/latest/) policy if applicable (PNM).

    r. Provide regular updates to the Office of Communications (Lead Team).

    s. Report to judges if forensic individuals are involved if applicable (State Office of Forensic Services).

C. **Provider Responsibilities and Obligations**

    1. The provider is obliged to adhere to the Provider Manual for Community Behavioral Health Providers, 01-112, as stipulated in their agreement.

    2. The Provider Manual requires providers to have established its own policy, protocols and documented practice of how information in the record is transferred when an individual is relocated or discharged from service.

        a. In the event of closure, the provider follows its own policy.

        b. The provider submits a complete certified copy of the record to the Department or the provider who will assume service provision, that includes individual's PHI, billing information, service related information such as current medical orders, medications, behavior plans as deemed necessary for the purposes of the individuals' continuity of care and treatment.

        c. The provider ensures that unused Special Medical Supplies (SMS), funds, personal belongings, burial accounts are submitted to the provider who will assume service provision.

        d. The closing provider informs the provider who will assume service provision of the time frames by which transfer of documents and personal belongings will be completed.

        e. The provider gives notification of their closure to the individuals being served, and connects the individual to the provider who will assume service provision, to facilitate a "warm hand-off".

        f. The provider completes discharge MICPs for individuals in accordance with Provider Manual for Community Behavioral Health Providers, 01-112 (https://gadbhdd.policystat.com/policy/773692/latest/).

    3. When a provider closes, they are responsible for making available all relevant business operations data that offers background to their situation. Such information includes but is not limited to:

        a. Giving DBHDD written notification of the closure including reason for closure and explanation of plans.

        b. Providing DBHDD regional and central office with a notice of termination, in accordance with the contract.

        c. Timeline for management of the closure related activities.

        d. Termination of the Medicaid number.

        e. Forwarding name and address.

        f. Secure the property so that there is no theft or loss of information or possessions.

        g. Give a designated point of contact for remaining business (bankruptcy trustee, another officer of the company).

        h. Submit final billing for services provided.

    4. When a provider's agreement or contract is terminated they:

        a. Submit final billing for services provided in accordance with the deadline established in the termination letter.

        b. Assist with relocation of the individuals as required by the agreement. This assistance includes transferring the records and belongings of the individuals to the new provider.

        c. The provider completes discharge MICPs for individuals in accordance with Provider Manual for Community Behavioral Health Providers, 01-112 (https://gadbhdd.policystat.com/policy/773692/latest/).

D. **Record of Critical Information**

    1. A file containing critical information pertaining to the business and cessation of contract is compiled by the provider's Regional Office(s) and maintained throughout the process of fulfilling DBHDD's obligations to the individuals receiving

services. The dossier (see Critical Information Checklist, **Attachment A**) provides a transparent timeline of events and actions taken throughout the closure or termination process:

  a. It is a complete record of dates and names of all individuals affected by the business closure.
  b. It contains photocopies of signed correspondence which verify that the obligations described above are met; and
  c. It is stored in accordance with HIPAA data management regulations under the auspices of the DBHDD Facilities Director.

E. **Follow Up**

  1. Within one month of the provider closure the Lead Team, with wider DBHDD representation and associated agencies as appropriate, meet to:
     a. Update the status of the process and identify and complete any outstanding issues.
     b. Enter a report of the conclusions of the process into the dossier.
     c. Confirm that the Critical Information Checklist (Attachment A) is complete, signed, sealed and sent into storage, or agree a date by when this will occur.

## LEGAL REFERENCES

Official Code of Georgia 31-8-81; 37-1-2; 37-1-20; 37-2-1 et seq.; 37-3-166; 37-3-2; 37-4-125; 37-4-3; 37-7-166; 37-7-2; 30-5-1 et seq.; 19-7-5; 16-6-5.1;Physicians: Title 43 Chapter 34 Articles 1 and 2 of the Georgia Code. Registered Nurses: Title 43 Chapter 26 Article 1 of the Georgia Code. LPN's: Title 43 Chapter 26 Article 2 of the Georgia Code. Optometrists: Title 43 Chapter 30 of the Georgia Code. Psychologists: Title 43 Chapter 39 of the Georgia Code. Professional Counselors, Social Workers, Marriage and Family Therapists: Title 43 Chapter 10A of the Georgia Code. Certified Addiction Counselors: Title 43 10A of Georgia Code (exemptions), Dentists, Dental Hygienists, Dental Assistants: Title 43 Chapter 1. Dietetics: Title 43 Chapter 11A. Occupational Therapists: Title 43 Chapter 28. Physical Therapists: Title 43 Chapter 33. Physicians' Assistants: Title 43 Chapter 34 Article 4. Respiratory Care: Title 43 Chapter 34 Article 6. Orthotics and Prosthetics: Title 43 Chapter 34 Article 8. Podiatry: Title 43 Chapter 35. Speech-Language Pathologists and Audiologists: Title 43 Chapter 44.

## RELATED POLICIES

Reporting and Investigating Deaths and Critical Incidents in Community Services, 04-106 (https://gadbhdd.policystat.com/policy/149306/latest/)

Provider Manual for Community Behavioral Health Providers, 01-112 (https://gadbhdd.policystat.com/policy/773692/latest/)

Professional Licensing or Certification Requirements and the Reporting of Practice Act Violations, 04-101 (https://gadbhdd.policystat.com/policy/149288/latest/)

Noncompliance with Audit Performance, Staffing, and Accreditation Requirements for Community Behavioral Health Providers, 01-113 (https://gadbhdd.policystat.com/policy/877982/latest/)

Requests from Media Sources to DBHDD Staff for Comments or Information, 18-105 (https://gadbhdd.policystat.com/policy/550581/latest/)

Confidentiality and HIPAA, 23-100 (https://gadbhdd.policystat.com/policy/574164/latest/)

| | |
|---|---|
| Attachments: | A - Critical Information Checklist (https://pstat-live-media.s3.amazonaws.com/attachments/document_30/823290/Attachment%20A.Checklist%20CLOSURE%20OF%20A%20DBHDD%20PROVIDER%204.3.14%20for%20PStat.pdf?Signature=J9zmIWpyMgamvYBwRAwHAcsxGTY%3D&Expires=1410033869&AWSAccessKeyId=AKIAJS7VN6JKKNCNGCXA) |

| Approver | Date |
|---|---|
| Joetta Prost, Ph.D.: DBHDD Policy Office | 4/3/2014 |
| Monica Parker, MA, LPC: Director, Community Mental Health | 4/7/2014 |
| Chris A. Gault, Ph.D.: Assistant Commissioner for Behavioral Health | 5/30/2014 |
| Joetta Prost, Ph.D.: DBHDD Policy Office | 5/30/2014 |

Copyright © 2014 PolicyStat LLC. All rights reserved